IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STEPHEN J. BLEISTINE, | |
| Plaintiff, | Civil Action No. 11-2138 (JBS/KMW) |
| v. | |
| DIOCESE OF TRENTON, et al, | **OPINION** |
| Defendants. | |

APPEARANCES:

James M. Carter, Esq.
Law Offices of Hoffman Dimuzio
4270 Route 42
Turnersville, NJ 08012
    Attorney for Plaintiff Stephen Bleistine

Michael J. Canavan, Esq.
Buchanan Ingersoll & Rooney PC
700 Alexander Park
Suite 300
Princeton, NJ 08540
    -and-
Scott L. Puro, Esq.
Backes & Hill, LLP
3131 Princeton Pike
Bldg. 5; Ste. 114
Lawrenceville, NJ 08648
    Attorneys for Defendants Diocese of Trenton and Holy Cross High School

**SIMANDLE**, Chief Judge:

**I. INTRODUCTION**

Plaintiff Stephen Bleistine brought this action against Defendants Holy Cross High School and Diocese of Trenton alleging that they terminated him unlawfully because of his age, in

1

violation of the Age Discrimination in Employment Act ("ADEA") and the New Jersey Law Against Discrimination ("NJLAD"). This action comes before the Court on Defendants' Motion for Summary Judgment. [Docket Item 14.] Defendants' motion will be granted because Plaintiff has failed to show that there is a genuine, material, factual dispute regarding the cause for his termination.

## II. BACKGROUND

This section provides an overview of the facts, the Motion for Summary Judgment, and the subsequent briefing.

### A. Factual Background

In June of 2007, Plaintiff Stephen Bleistine retired from the public school system at age 62.[1] (Def. Statement of Undisputed Facts ("Def. SOF") ¶ 6.) In the summer of 2007, he saw a newspaper ad for positions at Defendant Holy Cross High School. (Def. SOF ¶ 8.) The two advertised positions were Associate Principal for Curriculum and Development and Associate Principal for Academic Intervention. (Def. SOF ¶ 8.) Plaintiff only applied for the Associate Principal for Academic Intervention position. (Def. SOF ¶ 9.)

Holy Cross' Principal, Dennis Guida, oversees the day-to-day operations at Holy Cross and makes personnel decisions, including hiring and firing decisions. (Pl. Opp'n Ex. F, Guida Dep. 16:2-

---

[1]Plaintiff's date of birth is June 3, 1945. (Compl. ¶ 4.)

8.) Guida hired Plaintiff for the Academic Intervention position under a contract for the 2007-2008 school year. (Def. SOF ¶ 9.) Plaintiff's greatest asset in the hiring process was his ability to work with the Student Administrative Systems Information ("SASI") program, which includes software for scheduling, grade reporting, and student transcripts, because Holy Cross was switching its scheduling format. (Def. SOF ¶ 13, 17; Bleistine Dep. 27:22-25.)

During the scheduling process, guidance counselors met with students to develop schedules. (Def. SOF ¶ 19.) The counselors input this information, along with teachers' availability, into the SASI program. (Def. SOF ¶ 19.) Then Plaintiff created a master schedule. (Def. SOF ¶ 19.)

Plaintiff was also responsible for supervising the Dean of Students and handling student discipline. (Def. SOF ¶ 20.) Principal Guida and Plaintiff had philosophical differences regarding student discipline; Plaintiff preferred to strictly enforce the student code and often recommended expulsion, whereas Guida preferred to work with students to teach them proper behavior. (Def. SOF ¶¶ 22-24.) Plaintiff claimed that Guida called him an "old antiquated thinker" in the context of a dispute regarding strict enforcement of the dress code. (Def. SOF ¶ 26.) He claimed that this conversation occurred on April 20, 2009, approximately 70 days before his termination. (Pl. SOF ¶

3

3.) Guida disputed Plaintiff's account and claimed that he used the term "antiquated public school thinking" to describe a job applicant whom Plaintiff recommended. (Def. SOF ¶ 27.)

The "lion's share" of Holy Cross' funding comes from tuition and student fees. (Def. SOF ¶ 32.) In 2009, enrollment dropped from 759 students for the 2008-2009 school year to 685. (Def. SOF ¶ 35.) In March of 2009, the projected enrollment was 745 students, and Principal Guida notified six teachers that their contracts would not be renewed. (Def. SOF ¶ 37.) In May of 2009, the projected enrollment dropped to 685, and Principal Guida informed three more staff members, including Plaintiff, that their contracts would not be renewed. The following chart summarizes the terminations that occurred in 2009:

| NAME | POSITION | AGE | DATE OF TERMINATION |
|------|----------|-----|---------------------|
| Dennis Daly | Teacher | 26 | April 30, 2009 |
| Richard McCormick | Teacher | 36 | April 30, 2009 |
| Jennifer McNally | Teacher | 32 | April 30, 2009 |
| Mellisa Minuto | Teacher | 25 | April 30, 2009 |
| Patricia Sacks | Teacher | 57 | April 30, 2009 |
| Marie Boljen | Teacher | 53 | April 30, 2009 |
| Stephen Bleistine (Plaintiff) | Associate Principal | 64 | June 30, 2009 |
| Ron Green | Director of Technology | 50 | June 30, 2009 |
| Kevin McKenzie | Administrative Assistant | 27 | June 30, 2009 |

(Def. SOF ¶¶ 37, 39.)

Plaintiff was one of three Associate Principals at Holy Cross when he was terminated. The other two Associate Principals were Michael Fynan (age 56 at the time of the reduction in force) and Marie Germano (age 33). (Def. SOF ¶ 42.) They each had specific responsibilities: Plaintiff handled scheduling; Fynan handled finances; and Germano handled curriculum and instructional development. (Def. SOF ¶ 40.) Germano was hired in the summer of 2007, after Plaintiff was hired. (Def. SOF ¶ 11.)

Principal Guida explained that he decided not to renew Plaintiff's contract because he wanted to move the scheduling process to the guidance department and, once he had done so, there was no longer a need for the associate principal for scheduling. (Def. SOF ¶ 40.) When Guida told Plaintiff that Plaintiff's contract would not be renewed, he said the budget was insufficient to accommodate Plaintiff's position. (Def. SOF ¶ 41.) Fynan retained his position as Associate Principal for Business Administration, and Germano retained her position as Associate Principal for Curriculum and Development. (Def. SOF ¶ 42.) Guida reassigned Plaintiff's duties, and Jennifer Kelly, the Director of Guidance, was paid an additional $10,000 stipend to handle the SASI functions. (Def. SOF ¶ 45.)

After his termination, Plaintiff filed a complaint alleging age discrimination with the New Jersey Division on Civil Rights

("DCR"), which was dual filed with the Philadelphia Office of the Equal Employment Opportunity Commission ("EEOC"). According to the DCR investigator's report, when the investigator asked Plaintiff whether he ever heard any derogatory, age-related comments from anyone at Holy Cross School, Plaintiff said "No." (Def. SOF ¶ 29.) Plaintiff obtained a Right to Sue Notice from the EEOC in 2011 because the matter had been pending for more than six months; the DCR closed its files administratively. (Def. Mot. Summ. J. Ex. 10.)

Plaintiff then filed a Complaint in this Court alleging that he was equally or more qualified than the other two associate principals, Germano and Fynan, and that his age was the motivating factor in Defendants' decision to terminate his employment. He alleged two claims: violation of the Age Discrimination in Employment Act and violation of the New Jersey Law Against Discrimination.

**B. Defendants' Motion for Summary Judgment**

Defendants filed a Motion for Summary Judgment [Docket Item 14], arguing that Plaintiff's claims should be dismissed as a matter of law because there are no genuine issues of material fact. Defendants argue, essentially, that Plaintiff did not present direct evidence of discrimination and that he cannot show circumstantial evidence either. Defendants argue that the only evidence of alleged hostility toward older people that Plaintiff

offered was a stray comment from Principal Guida. Even if Guida did characterize Plaintiff as an "old antiquated thinker," that comment "cannot be construed by any reasonable trier of fact as anything more than a stray remark which was not part of the decision making process and was unconnected in time or context to the non-renewal of Mr. Bleistine's contract." (Def. Mot. Summ. J. at 19.) Defendants note case law holding that similar stray comments are insufficient to survive summary judgment.

Defendants argue that it is particularly difficult to show age discrimination because Plaintiff was first hired when he was already a member of the protected class. Defendants argue that Plaintiff ignores the diminished budget due to reduced enrollment and the eight other staff members who were also terminated, most of whom were not in the protected class. In a reduction in force case, Defendants argue that Plaintiff cannot simply point to "one comparator" (i.e. Germano) to show that similarly situated people were treated differently.

In addition, Defendants argue that Plaintiff's subjective beliefs about his qualifications are insufficient to create genuine issues of fact, particularly because the essence of reduction in force is that competent employees, who would retain their jobs in more prosperous times, are let go. The purpose of the age discrimination statutes, Defendants argue, is to prevent age discrimination, not to mandate that employers must choose

7

older workers over younger workers.

And finally, Defendants argue that, even if the Court denies summary judgment, the Court should dismiss, with prejudice, all claims against Defendant Diocese of Trenton because the Diocese of Trenton was never Plaintiff's employer. The age discrimination statutes only apply to employers; Defendants argue that the Diocese of Trenton and Holy Cross High School are separate corporations, that only Holy Cross employed Defendant, and that the Holy Cross principal had sole authority over hiring and firing decisions.

**C. Plaintiff's Opposition**

Plaintiff filed Opposition [Docket Item 16] to Defendants' motion. In his Opposition brief, Plaintiff provided a "Statement of Contested Material," which contains only three numbered paragraphs and which does respond to any paragraphs in Defendants' "Statement of Undisputed Material Facts." Plaintiff's statement includes the following facts: First, Plaintiff states that "[t]he most important fact to be determined by the jury, and the reason summary judgment is inappropriate, is whether the motivation of the defendants in failing to renew the plaintiff's employment contract was his age." (Pl. SOF ¶ 1.) Second, Plaintiff states that "[t]he positions held by the plaintiff and the other two associate principals were substantially similar positions and were not distinct." (Pl. SOF ¶ 2.) The third

statement is that "[t]he defendants' employee and decision-maker, Dennis Guida, made a comment that the plaintiff was 'old' and that his thinking was 'antiquated' on or about April 20, 2009, approximately 70 days before he was advised of the defendants' decision to not renew his contract." (Pl. SOF ¶ 3.)

Plaintiff argued that summary judgment was inappropriate because he had established a prima facie case of age-based discrimination and that there was a genuine issue of material fact from which a reasonable jury could conclude that his age was the cause of his termination. Plaintiff argues that he, Germano, and Fynan were all similarly situated in terms of their job qualifications, job categories, and a common core of identical job duties and functions, such as supervising teachers. Plaintiff also argued that the Court need not analyze his prima facie case because the Court must only resolve one question, i.e. whether Plaintiff has produced sufficient evidence for a reasonable jury to conclude that the employer's asserted nondiscriminatory reason was pretextual or that there was intentional discrimination.

Plaintiff argues that Fynan and Germano are respectively eight and thirty-one years younger and that those age differences are sufficient to establish discrimination. Plaintiff argues that the other eight employees who were terminated do not impact the discrimination evidence because Plaintiff "was an associate principal, and as such, an administrator while the reamining

eight employees affected by the reduction in force were not members of the administration but were rather teachers or office staff." (Pl. Opp'n at 7.) Plaintiff argues that "the finder of fact must compare 'apples to apples,' i.e. administrators to administrators, rather than teachers or staff to administrators." (Pl. Opp'n at 7.)

In addition, Plaintiff argues that "defendant has offered little explanation as to why or how this decision was made other than to cite overall financial concerns requiring a reduction in force." (Pl. Opp'n at 7-8.) Plaintiff states, "[t]he only information provided by the school principal, Mr. Guida, was that once Holy Cross moved scheduling – one of Mr. Bleistine's responsibilities – into the guidance department, there was no longer a need for his administrative position. However, there is no specific indication of why Mr. Bleistine was chosen over Mr. Fynan and Ms. Germano." (Pl. Opp'n at 8.)

Plaintiff argues that the lack of explanation regarding the reason for his termination is highlighted when comparing the associate principals' credentials and experience because Plaintiff had higher qualifications and more expertise. In addition, Plaintiff argues that "[s]ignificant indirect evidence of proof that the plaintiff's age was a factor in terminating him is that it would have been less expensive to keep him over Ms. Germano." (Pl. Opp'n at 9.)

Essentially, Plaintiff argues that there is evidence to support his age discrimination claims, particularly when considering the evidence in his favor. He claims that he has established a prima facie case of discrimination and that there "exists a genuine issue of material fact upon which a reasonable jury could find that defendant's proffered reason for the discharge is pretextual or that an invidious discriminatory reason was more likely than not a motivating or determinative cause. . . ." (Pl. Opp'n at 10.)

Finally, Plaintiff asserts that the Diocese of Trenton is an appropriate party to the case and should not be dismissed.

### D. Defendants' Reply

Defendants submitted a Reply [Docket Item 21] to Plaintiff's Opposition. Defendants challenged each element of Plaintiff's Statement of Contested Facts. Defendants argued that Plaintiff's first fact, which asserts that the jury must determine whether defendants' motivation was age discrimination, is not a statement of fact with supporting evidence. Defendants challenged Plaintiff's second fact, which is that all three associate principal positions were substantially similar and indistinct, by arguing that Plaintiff cited general requirements for associate principals, not the specific job descriptions. In addition, Defendants argued that Plaintiff's extensive resume does not indicate experience in finance or curriculum and instructional

development, _i.e._ the areas handled by Fynan and Germano.
Defendants' challenged Plaintiff's third fact, which is that
Principal Guida said plaintiff was 'old' and his thinking was
'antiquated' on or about April 20, 2009, by arguing that fact was
contradicted by Plaintiff's admission to the EEOC/DCR
investigator and by Plaintiff's deposition testimony.

Defendants emphasized that Guida had a legitimate, non-
discriminatory reason, _i.e._ cutting staff to maintain a balanced
budget, and that Plaintiff had offered "no evidence to refute
Guida's explanation other than his belief that age was the
primary motivation." (Def. Reply at 6.) Defendants also argued
that Plaintiff had not made a prima facie case of discrimination
because (1) he did not show he was competent to serve in the
positions that remained and (2) the terminated employees
reflected disparate ages. Defendants claimed that Plaintiff had
not shown that Guida's proffered reasons were implausible or that
invidious discrimination was the determining factor.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a). A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the non-moving party."

12

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007).

Once the moving party has supported its motion, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A summary judgment movant may meet its burden by showing that the opposing party is unable to meet its burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Nonetheless, Defendants, as the moving parties on the motion, bear the initial responsibility of demonstrating the absence of a genuine issue of material fact. Id.

IV. STATEMENT OF FACTS

Before the Court can turn to its legal analysis, it must evaluate the Statements of Fact presented by the parties. The essence of summary judgment is a determination of whether there are genuine, material, facts in dispute. Local Civil Rule 56.1(a)

requires summary judgment movants to submit a statement of undisputed material facts, citing to affidavits and other documents submitted in support of the motion. The opponent of summary judgment shall furnish "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement. . . ." L. Civ. R. 56.1(a). "[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a). The purpose behind this requirement is "to narrow the issues before the District Court, to assist in identifying whether material facts are, or are not, in dispute in a summary judgment motion." Lite, N.J. Federal Practice Rules, Comment 2.a. to L. Civ. R. 56.1, at 287 (2013 ed.).

Defendants' Motion for Summary Judgment contains a "Statement of Undisputed Material Facts" which contains 45 numbered paragraphs and cites exhibits, such as deposition transcripts. In his Opposition brief, Plaintiff provided a "Statement of Contested Material," which contains only three numbered paragraphs and which does respond to any paragraphs in Defendants' statement. Under L. Civ. R. 56.1, "facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted." Hill v. Algor, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000). See also Booker v. Twp. of Willingboro, CIV. 10-4886 JBS/JS, 2012 WL 2397929 *1 n.1 (D.N.J.

June 22, 2012) (where plaintiff only responded to four of 87 facts asserted by defendants, the other 83 facts were deemed undisputed).

Plaintiff's statement includes the following facts: First, Plaintiff states that "[t]he most important fact to be determined by the jury, and the reason summary judgment is inappropriate, is whether the motivation of the defendants in failing to renew the plaintiff's employment contract was his age." (Pl. SOF ¶ 1.) This statement is not a fact; it is a hypothesis that Plaintiff would like a jury to test. Plaintiff has not cited any documentary support for this statement, in contravention of Local Civil Rule 56.1(a). The Court must make factual inferences in the Plaintiff's favor, but "it is insufficient for the party opposing a motion for summary judgment to rely upon suppositions, conjecture or to assert that an issue may arise at a future date." U. S. ex rel. Sacks v. Philadelphia Health Mgmt. Corp., 519 F. Supp. 818, 823 (E.D. Pa. 1981). The Court will therefore disregard the Plaintiff's first fact.

Second, Plaintiff states that "[t]he positions held by the plaintiff and the other two associate principals were substantially similar positions and were not distinct." (Pl. SOF ¶ 2.) As support for this statement, Plaintiff directs the Court to Exhibits C and D. Exhibit C is a list entitled "Qualifications of Vice-Principal," and it explains basic requirements, such as

15

New Jersey Teacher Certification and competency in management, interpersonal, and communication skills, for vice-principal/assistant principal positions. Exhibit D, the second exhibit that Plaintiff cites in support of paragraph 2, is the cover page and page 15 of the Holy Cross High School Faculty Manual. Page 15 lists the leadership team, including associate principals Michael Fynan, Stephen Bleistine, and Marie Germano, and the leadership support team and Department Chairpersons/Academic Council. This list provides no explanation of duties or responsibilities.

The Court shall accept Plaintiff's assertion that the associate principal positions were substantially similar because they shared many similar responsibilities, but Plaintiff's own deposition testimony contradicts his assertion that the jobs were indistinct. For example, when discussing the roles of the Holy Cross Associate Principals, Plaintiff stated, "the central focus of our job was to help Dennis [Guida] in running the school. And then we all had like a different area that we broke down – broke down our categories into, and mine was student discipline and it was student services, scheduling." (Pl. Opp'n Ex. B, Bleistine Dep. 38:1-6.) In addition, in his deposition, Plaintiff admitted that, when he applied for the position at Holy Cross High School, two positions were advertised, assistant principal for curriculum and development and associate assistant principal for academic

16

intervention. (Bleistine Dep. 24:2-6.) Plaintiff only applied for the academic intervention position. (Bleistine Dep. 24:9-17.) Plaintiff's deposition testimony, the different job titles, and Plaintiff's decision to apply for only one position belie his assertion that the two positions were indistinct. For purposes of evaluating Defendants' summary judgment motion, the Court shall therefore assume that the three associate principal positions shared many responsibilities, but each had its own "different area," as Plaintiff himself testified.

The third and final fact in Plaintiff's Statement of Contested Material Facts is "[t]he defendants' employee and decision-maker, Dennis Guida, made a comment that the plaintiff was 'old' and that his thinking was 'antiquated' on or about April 20, 2009, approximately 70 days before he was advised of the defendants' decision to not renew his contract." (Pl. Statement of Contested Material Facts, ¶ 3.) Plaintiff's deposition testimony was that the comment was "old antiquated public school thinker." (Bleistine Dep. 58:16-17.) Defendants dispute the timing and context of this statement, but the Court must view evidence in favor of the nonmoving party and shall disregard Defendants' version of events.

Other than the three statements discussed above, the Court has deemed undisputed the facts in Defendants' Statement of Facts.

## V. ADEA CLAIM

This section provides an overview of ADEA law, Plaintiff's prima facie case, Holy Cross' asserted reasons for terminating Plaintiff, and Plaintiff's failure to show that those reasons mask invidious discrimination.

### A. ADEA Legal Standard

The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The meaning of the ADEA's requirement that an employer took adverse action "because of" age "is that age was the reason that the employer decided to act." Gross v. FBL Fin. Services, Inc., 557 U.S. 167, 176 (2009). In other words, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Id. at 176.

The ADEA's prohibition against discrimination is "limited to individuals who are at least 40 years of age," § 631(a). This language "does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older." O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996).

18

A plaintiff may demonstrate age discrimination under the ADEA by either direct or indirect evidence. Torre v. Casio, Inc., 42 F.3d 825, 829 (3d Cir. 1994). Direct evidence of discrimination "would be evidence which, if believed, would prove the existence of the fact in issue *without inference or presumption.*" Id. at 829 (emphasis in original).[2] However, evidence is not direct "where the trier of fact must *infer* the discrimination on the basis of age from an employer's remarks." Id. at 829 (emphasis in original). A plaintiff seeking to prove his case through direct evidence, confronts a "high hurdle" because "the evidence must demonstrate that the decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision." Anderson v. Consol. Rail Corp., 297 F.3d 242, 248 (3d Cir. 2002).

In order to establish a case through indirect evidence, a plaintiff must establish a prima facie case showing that he: "(1)

---

[2]The Third Circuit, in Torre, explained that an example of evidence that would be considered "direct" is found in Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985). In TWA, former airline captains showed that an airline's policy allowed those disqualified from continuing as a captain for any reason other than age to transfer automatically to the position of flight engineer, but required age-disqualified captains to bid for engineer vacancies or retire if no vacancies occurred prior to their 60th birthdays. Id. at 121. This scheme "directly demonstrated TWA's disparate treatment on the basis of age." Torre at 829 n.2.

was a member of a protected class (i.e. he was forty years of age or older); (2) was qualified for the position at issue; (3) suffered an adverse employment action; and (4) was replaced by a sufficiently younger person, raising an inference of age discrimination." Anderson at 249.

This case involves a reduction-in-force, i.e. a situation in which Plaintiff was not replaced by another employee, but instead was terminated in the context of a school-wide reduction in staffing. The Third Circuit has recognized that "the fourth element is inadequate in a reduction in force context" and, in such a case, "the fourth element is satisfied by showing that the employer retained a 'sufficiently younger' employee." Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 235 (3d Cir. 1999). In addition, "to present a prima facie case raising an inference of age discrimination in a reduction in force situation, the plaintiff must show, as part of the fourth element, that the employer retained someone similarly situated to him who was sufficiently younger." Anderson at 250. The Anderson court explained that the "similarly situated" requirement is necessary because the ADEA "is not a bumping statute;" in other words, the ADEA does not guarantee that younger employees will be bumped to ensure that protected employees retain their positions. Anderson at 250.

Once the plaintiff has established a prima facie case, the

"burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). The employer can satisfy this burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Id. at 763. Once the employer articulates a legitimate reason for the unfavorable employment decision, the burden of production moves to the plaintiff, who must show that the employer's explanation is pretextual. Id. at 763.  To defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 764. Pretext "is not demonstrated by showing simply that the employer was mistaken. . . . Instead, the record is examined for evidence of inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons." Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3d Cir. 1995).

**B. Plaintiff Has Established a Prima Facie Case**

Plaintiff has not presented evidence of direct discrimination; this case requires the indirect-evidence analysis. Plaintiff has satisfied the four necessary elements for establishing a prima facie case: First, Plaintiff was 64 years old at the time of termination and was a member of the protected class. Second, Plaintiff has produced substantial evidence showing that he has extensive experience in school administration and that he was particularly qualified to use the SASI program. Third, Plaintiff suffered an adverse employment action because his employment contract was not renewed.

And fourth, Holy Cross retained sufficiently younger employees. The associate principals who remained were Germano (age 33) and Fynan (age 56). When compared to Plaintiff (age 64), the average age difference is 19.5 years. In establishing the fourth element, there is no particular age difference that must be shown: "a five year difference can be sufficient, . . . but . . . a one year difference cannot." Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995). Here, the 19.5 year average age difference is sufficient to establish the fourth element. See, e.g., Barber v. CSX Distrib. Servs., 68 F.3d 694, 699 (3d Cir. 1995) (eight year difference between plaintiff and comparator could support a finding that the comparator was "sufficiently younger"); Sempier v. Johnson & Higgins, 45 F.3d 724, 729-30 (3d

Cir.1995) (the combined difference in age between plaintiff and four-years-younger and ten-years-younger coworkers was sufficient to satisfy the fourth prong of a prima facie case).

**C. Plaintiff Cannot Show Pretext**

In response to Plaintiff's prima facie case, Holy Cross has asserted several reasons for the termination. First, Holy Cross has emphasized that it had to balance its budget because enrollment dropped from 759 students to 685 and the lion's share of its funding comes from tuition, which is undisputed. Second, Principal Guida explained that he wanted to move the scheduling responsibility to the guidance department, which is also undisputed. Third, the associate principals whom Holy Cross retained, Germano and Fynan, handle instructional development, curriculum, and finance responsibilities, which were outside of Plaintiff's expertise.

Plaintiff claims invidious discrimination existed, but his arguments do not cast doubt on Holy Cross' asserted reasons. To create a factual dispute as to pretext, Plaintiff "must not only introduce evidence from which a reasonable person could infer that he is qualified; he also must introduce evidence that casts doubt on his employer's contention that there was a legitimate business justification for letting him go." Healy v. New York Life Ins. Co., 860 F.2d 1209, 1220 (3d Cir. 1988).

Plaintiff has not challenged the validity of any of Holy

Cross' reasons. He has not disputed that Holy Cross had to balance its budget because of the drop in enrollment; that he lacks expertise in instructional development, curriculum, and finance; that Guida wanted to move scheduling to the guidance department; or that Guida did, in fact, make that shift. Plaintiff admitted that, when he first applied to Holy Cross, the associate principal position that handles curriculum and instructional development was available, but he did not apply for it. (Bleistine Dep. 24:8-17.) That is the position that Germano obtained and retained after Plaintiff's termination.

Plaintiff argues that he had extensive experience and that he was skilled in the SASI scheduling process. But it is undisputed that Plaintiff was terminated as part of a reduction in force (or "RIF"). As the Third Circuit has noted, however, "the essence of a RIF is that competent employees who in more prosperous times would continue and flourish at a company may nevertheless have to be fired." Healy v. New York Life Ins. Co., 860 F.2d 1209, 1220 (3d Cir. 1988). Plaintiff's competence and expertise is insufficient to establish pretext given the reduced enrollment and subsequent reduction in force at Holy Cross.

Plaintiff argues that Plaintiff, Germano, and Fynan "were similarly situated in terms of job qualifications and job category." (Pl. Opp'n at 3.) The three associate principals were similarly situated, and their jobs carried many similar

24

responsibilities, such as supervising teachers. But differences also existed between the daily functions of the respective associate principal positions. Germano and Fynan manage finance, curriculum, and instructional development, areas that Plaintiff did not handle and has not asserted that he can handle.

Plaintiff also argues that Holy Cross' reason regarding declining enrollment and budgetary problems masks invidious discrimination because Defendants fail to acknowledge that "Bleistine was an associate principal, and as such, an administrator, while the remaining employees affected by the reduction in force were not members of the administration but were rather teachers or office staff." (Pl. Opp'n at 7.) Plaintiff insists that "the finder of fact must compare 'apples to apples,' i.e. administrators to administrators." (Pl. Opp'n at 7.) The Court finds no indication whatsoever of pretext simply because Plaintiff was the only associate principal who was terminated. In fact, it seems logical that, if Holy Cross was losing six teachers and two administration employees, it would need fewer associate principals to manage the remaining employees.

Plaintiff argues that Holy Cross has "offered little explanation as to why or how this [termination] decision was made. . . ." (Pl. Opp'n at 7.) Plaintiff argues that the only information provided by Holy Cross was that, once scheduling was

moved to the guidance department, there was no longer a need for his administrative position. Plaintiff states, "there is no specific indication of why Mr. Bleistine was chosen over Mr. Fynan and Ms. Germano." (Pl. Opp'n at 8.) Holy Cross has indicated why Plaintiff was chosen: Plaintiff handled scheduling, and that function moved. Plaintiff has emphasized that he had extensive training in the SASI program and that Germano and Fynan had not received SASI training. But no one has alleged that Germano and Fynan handled SASI scheduling after Plaintiff left.

Plaintiff also argues that "[s]ignificant indirect evidence of proof that the plaintiff's age was a factor in terminating him is that it would have been less expensive to keep him over Ms. Germano." (Pl. Opp'n at 9.) Even if retaining Germano was more expensive than retaining Plaintiff would have been, that fact does not show pretext. Germano performed different functions that Plaintiff could not have performed, while Plaintiff's scheduling responsibilities were simply added as duties for the guidance department at a substantial monetary savings. Age discrimination laws "should not be used to impede an employer's effort to organize its business as it deems fit so long as the employer in doing so does not violate employment age discrimination restrictions." Hyland v. Am. Int'l Group, 360 F. App'x 365, 368 (3d Cir. 2010); cf. Gray v. York Newspapers, Inc., 957 F.2d 1070, 1083 (3d Cir. 1992) ("[T]he ADEA is a discrimination statute and

is not intended to handcuff the management and owners of businesses to the *status quo.*"). Aside from Germano's compensation, Plaintiff also testified that he spoke to Jennifer Kelly, the woman who took over the scheduling responsibilities for a $10,000 stipend. Kelly allegedly told Plaintiff that the scheduling "was really an unbelievable amount of work" and that "I don't think Dennis [Guida] has a clue about how much work this is. . . ." (Bleistine Dep. 81:15-17.) Plaintiff may believe that Guida's assignment of the scheduling task was unwise and fiscally imprudent, but "[t]o discredit the employer's proffered reason, . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994). In any event, if Ms. Kelly is correct, Holy Cross is undercompensating her at $10,000 for the additional scheduling work she must do, but this does not contradict Holy Cross' proffered rationale for the RIF as motivated by cost savings. The Court may not dictate how Holy Cross structures and compensates its employees; the Court may only ensure that Holy Cross does not discriminate on the basis of age in making its management decisions.

**D. Guida's Alleged Stray Remark Does Not Establish Pretext**

Plaintiff also argues that Guida called him an "old

27

antiquated public school thinker" 70 days before his termination and that this comment shows discriminatory animus.[3]

The Court will assume, as Plaintiff argues, that a reasonable fact-finder could interpret this comment as a comment on Plaintiff's age. The comment actually refers to Plaintiff's thinking, not his age. Plaintiff has acknowledged that he and Guida disagreed over disciplinary issues, that Plaintiff thought Guida was too lax, and that Plaintiff would have expelled students whom Guida did not expel. For example, Plaintiff testified that he was frustrated because Guida did not expel two boys for reenacting a movie scene in which one boy defecated on the other. He stated, "I thought those kids should have been expelled. I could not see any reason to maintain those kids at Holy Cross High School, but Dennis' [Guida's] choice was to keep them. . . ." (Bleistine Dep. 63:14-17.) Plaintiff claims that Guida called him an "old antiquated public school thinker" after another disciplinary dispute in which Plaintiff expressed frustration "with the fact that these kids were walking around

---

[3]Holy Cross claims that Guida referenced a job applicant, not plaintiff, in making the comment and that the timing was further removed from the date of termination. In addition, Holy Cross notes that, according to the DCR investigator's report, when the investigator asked Plaintiff whether he ever heard any derogatory, age-related comments from anyone at Holy Cross School, Plaintiff said "No." (Def. SOF ¶ 29.) At this procedural posture, the Court will presume that Plaintiff's version is correct since all evidence must be viewed in favor of the non-moving party.

with their shirts out and . . . not being dressed very properly.
. . ." (Bleistine Dep. 59:25-60:2.) Essentially, it seems that
Guida's alleged comment was directed at Plaintiff's thinking
regarding strict discipline, as opposed to his age.

But the alleged comment contains the word "old" and all
evidence must be construed in Plaintiff's favor. The Court will
therefore assume that the comment was a reference to Plaintiff's
age. In Hyland v. Am. Int'l Group, 360 F. App'x 365, 367 (3d Cir.
2010), the Third Circuit analyzed a case in which the plaintiff's
"direct supervisor and the prime mover in the reorganization that
resulted in [plaintiff]'s termination referred to [plaintiff] as
the 'old man' of the operation." The Third Circuit held that
"this stray remark made ten months before [plaintiff]'s
termination could not support an inference of age discrimination.
. . ." Id. at 367. The Hyland court explained:

> We do not think that a single remark that might reflect
> the declarant's recognition of an employee's age in a
> context unrelated to the employee's termination is
> sufficient evidence to support a prima facie case of age
> discrimination based on direct evidence at the time that
> the employer later terminates the employee. After all,
> whether or not a supervisor makes reference to an
> employee's age it is likely that he will have some
> concept of it.

Id. at 367-68 (3d Cir. 2010). The Hyland court emphasized that
the context of the "old man" comment was unrelated to the
plaintiff's termination. In this case, the context in which

29

Plaintiff claims Guida made the remark, i.e. after a policy disagreement regarding students' failure to tuck in their shirts, was also unrelated to Guida's asserted reasons for the termination. In addition, all parties have agreed that Plaintiff and Guida had philosophical differences regarding discipline, and that Plaintiff's approach was seen as "old school" in the sense of being strict or uncompromising. The alleged comment is not evidence of inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons. See Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3d Cir. 1995).

The Hyland comment occurred 10 months before the termination, whereas Plaintiff claims that the comment in this case occurred only 70 days before the termination. But other significant events occurred in between the alleged comment and the termination. For the 2008-2009 school year, enrollment was 759 students. In March of 2009, Guida thought the next year's enrollment would drop to 745 students, and he terminated six teachers. Plaintiff claims that Guida made the "old antiquated thinker" comment on April 20, 2009. In May of 2009, Guida learned that the enrollment would drop to 685 students, not 745. The next month, he terminated three more people, including Plaintiff. Given the distinct context, the undisputed disciplinary differences between Plaintiff and Guida, and the timeline in

30

terms of Guida's learning of the dropping enrollment numbers, the Court holds, as a matter of law, that this alleged remark does not show discriminatory animus.

The Hyland court concluded, "it would be unfortunate if the courts forced the adoption of an employment culture that required everyone . . . to be careful so that every remark made every day passes the employment equivalent of being politically correct lest it be used later against the employer in litigation." Id. at 368. Guida's alleged comment may have been impolitic, but it does not suggest that Guida's stated reasons for terminating Plaintiff were pretextual.

Plaintiff cites Steward v. Sears Roebuck & Co., 231 F. App'x 201, 211 (3d Cir. 2007) to argue that Guida's remark does show discrimination. The Steward court stated that "remarks made by supervisors directly involved in the termination decision at issue can be evidence of their discriminatory animus, even if the remarks were not made in connection with the termination decision." Steward v. Sears Roebuck & Co., 231 F. App'x 201, 211 (3d Cir. 2007).[4] In Steward, the comment at issue was "Hell, you

---

[4]The Third Circuit has held that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) (cited with approval in Fuentes v. Perskie, 32 F.3d 759, 767 (3d Cir. 1994)). In Ezold, the stray remark occurred five years before the adverse employment decision and was made by an authority figure who did not participate in the decision-making

are old enough, you have been around long enough, you should handle this." Id. at 211. The Steward court held that a reasonable fact-finder could infer that the remark reflected age bias and that it certainly reflected the employer's "awareness" of the plaintiff's age. Steward at 211.

The Steward case is easily distinguishable from Plaintiff's case. The Steward court noted that the plaintiff presented this remark "[i]n addition to presenting evidence to cast doubt on the three specific reasons given by [the employer] for his termination." Id. at 211. Here, Plaintiff has not presented any evidence to cast doubt on Holy Cross' specific reasons for the termination. In addition, the Steward employer made that comment to plaintiff Steward after Steward voiced concerns about the additional responsibilities that were given to him. This context is relevant because Steward's employer claimed that Steward failed to timely complete tasks, but Steward showed pretext with evidence that the employer's deadlines were unreasonable.

In addition, the Steward plaintiff had begun working for his employer in 1979 and was terminated in 2001, approximately seven months after he came under the supervision of a new manager. His previous managers had all given him positive evaluations, and the new manager was the person who made the "Hell, you are old enough" comment. Here, Principal Guida hired Plaintiff Bleistine

---

process.

32

at the age of 62 and terminated him two years later. Unlike the
Steward case, here, there was no shift in management personnel
from the person who hired Plaintiff to the person who terminated
him. The Eighth Circuit has held that "[i]t is simply incredible,
in light of the weakness of plaintiff's evidence otherwise, that
the company officials who hired him at age fifty-one had suddenly
developed an aversion to older people less than two years later."
Lowe v. J.B. Hunt Transp., Inc., 963 F.2d 173, 175 (8th Cir.
1992). In this case, Guida hired Plaintiff, and the alleged
comment does not indicate that, two years later, Guida "developed
a sudden aversion to older people."

Plaintiff has not pointed to evidence from which a
factfinder could reasonably either "(1) disbelieve the employer's
articulated legitimate reasons; or (2) believe that an invidious
discriminatory reason was more likely than not a motivating or
determinative cause of the employer's action." See Fuentes at
764. Considering all of his arguments together, the Plaintiff has
not shown that Holy Cross' reasons are worthy of disbelief or
that invidious discrimination was likely. Defendant's Motion for
Summary Judgment on Plaintiff's ADEA claim is granted.


**VI. NJLAD CLAIM**

The New Jersey Law Against Discrimination ("NJLAD")
prohibits, <u>inter alia</u>, discrimination on the basis of age. N.J.

Stat. Ann. §§ 10:5-4, 10:5-12. New Jersey has adopted the burden-shifting analysis for pretext cases under the NJLAD, thus the Court's ADEA discussion <u>supra</u> applies equally to Plaintiff's NJLAD claims. <u>Geltzer v. Virtua W. Jersey Health Sys.</u>, 804 F. Supp. 2d 241, 250 (D.N.J. 2011); <u>see also</u> <u>Martinez v. Nat'l Broad. Co.</u>, 877 F. Supp. 219, 227 (D.N.J. 1994) ("The burdens of proof and production for discrimination claims arising under Title VII, the ADEA, and the LAD are the same.") <u>and Bergen Commercial Bank v. Sisler</u>, 157 N.J. 188, 200, 723 A.2d 944, 949 (1999) (The New Jersey Supreme Court, "in outlining approaches and infusing discrimination claims under the LAD with substantive content typically has looked to federal cases arising under analogous provisions of . . . the Age Discrimination in Employment Act"). Because Plaintiff's ADEA claim will not survive summary judgment, Plaintiff's NJLAD claim will also be dismissed.


**V. CONCLUSION**

Defendants' Motion for Summary Judgment is granted. Plaintiff's ADEA and NJLAD claims will be dismissed, and the case will be closed. Because the Court is granting Defendants' motion and dismissing Plaintiff's claims, the Court need not analyze

Defendants' argument that Defendant Diocese of Trenton should be dismissed because it was not Plaintiff's employer.


**November 14, 2012**       **s/ Jerome B. Simandle**
Date              JEROME B. SIMANDLE
                Chief U.S. District Judge